UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EVELYN CANALES, o/b/o       :
MARLEEN A. PAGAN,           :
      Plaintiff,            :
                                    :
      v.                    :       CA 07-474 ML
                                      :
MICHAEL J. ASTRUE,          :
Commissioner of             :
Social Security,            :
        Defendant.        :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff Evelyn Canales ("Plaintiff"), on behalf of her daughter, Marleen A. Pagan ("Claimant" or "the child"), for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Supplemental Security Income ("SSI") benefits, under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff has filed a motion to reverse the decision of the Commissioner. <u>See</u> Plaintiff's Motion to Reverse the Decision of the Commissioner (Document ("Doc.") #9) ("Motion to Reverse"). Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner. <u>See</u> Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #10) ("Motion to Affirm").

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's determination that Claimant was not disabled is supported by substantial evidence in the record. Accordingly, based on the following analysis, I recommend that Plaintiff's

Motion to Reverse be denied and that Defendant's Motion to Affirm
be granted.

## Procedural History

On November 3, 2003, Plaintiff filed an application for SSI
on behalf of Claimant, (R. at 12, 47-50), alleging disability
since February 1, 2002, due to lupus, cataracts, and high blood
pressure, (R. at 12, 13, 22, 31, 57, 400).  The claim was denied
initially and on reconsideration, (R. at 12, 20, 21, 22-25, 28-
31), and a request for hearing before an administrative law judge
("ALJ") was timely filed, (R. at 12, 32).  A hearing was held on
January 9, 2006, at which Plaintiff and Claimant, represented by
counsel, appeared and testified.  (R. at 12, 398-417)  On
February 15, 2006, the ALJ issued his written Decision, finding
that Claimant was not disabled and, therefore, was not eligible
to receive child SSI benefits.  (R. at 12-19)

Plaintiff requested review by the Appeals Council, (R. at 8,
379), which on October 25, 2007, denied her request, (R. at 4-6),
thereby rendering the ALJ's decision the final decision of the
Commissioner, (R. at 4).  Thereafter, Plaintiff filed this action
for judicial review.

## Issues

The issues for determination are: 1) whether substantial
evidence supports the ALJ's finding that Claimant's condition did
not meet or equal a listing, and 2) whether the Appeals Council's
order denying review constituted an egregious mistake.

## Background

Claimant was born in 1993.  (R. at 12, 401)  She was in the
seventh grade, in regular classes, at the time of the hearing
before the ALJ.  (R. at 13, 401)  The basis for the claim of

disability was systemic lupus erythematosus[1] ("SLE") with cataracts and high blood pressure. (R. at 31, 57)  The disability allegedly began on February 1, 2002. (R. at 47)

### Law Governing Childhood Disability Claims

Under the current standard for defining childhood disabilities under the Act:

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i); see also 20 C.F.R. § 416.906 (2008).

> In evaluating a child's application for SSI benefits, an ALJ must engage in a three-part inquiry and determine whether: (1) the child is engaged in substantial gainful activity; (2) the child has an impairment or combination of impairments that is severe; and (3) the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of the regulations. 20 C.F.R. §§ 416.924(b)-(d). If, at the third step of the analysis, the ALJ determines that the child's impairment does not meet or equal a listed impairment, the ALJ must then consider whether the child's impairment is equivalent in severity to that of a listed impairment (i.e., whether "results in limitations that functionally equal the listings"). 20 C.F.R. § 416.926a(a).

Orben v. Barnhart, 208 F.Supp.2d 107, 109 (D.N.H. 2002).

---

[1] Systemic lupus erythematosus ("SLE") is defined as

> an inflammatory connective tissue disease of unknown cause that occurs chiefly in women and that is characterized esp[ecially] by fever, skin rash, and arthritis, often by acute hemolytic anemia, by small hemorrhages in the skin and mucous membranes, by inflamation of the pericardium, and in serious cases by involvement of the kidneys and central nervous system ....

Merriam Webster's Medical Desk Dictionary 796 (1996).

"Functional equivalency means that the impairment is of 'listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain ....'"[2] Encarnacion v. Barnhart, 331 F.3d 78, 84 (2nd Cir. 2003)(quoting 20 C.F.R. § 416.926a(a))(alteration in original).

> The ALJ considers how a child functions in his activities "in terms of six domains:" "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and[] (vi) Health and physical well-being." [20 C.F.R.]

---

[2] Section 416.926a(e)(2) provides, in relevant part, that:

> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i) (2008). An "extreme" limitation is found:

> when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

4

§ 416.926a(b)(1).  The regulations provide that a child must be found to be disabled if he or she has an impairment or impairments of "listing-level severity," that is, an "extreme" limitation in one of these domains, or "marked" limitations in two or more domains.  20 C.F.R. § 416.926a(a).

Encarnacion v. Barnhart, 331 F.3d at 84-85 (footnote omitted).

## ALJ's Decision

At the first step of the inquiry, the ALJ found that Claimant had never engaged in substantial gainful activity.  (R. at 13, 19)  At the second step, he found that Claimant's SLE with cataracts was severe within the meaning of the regulations, (id.), but that, at the third step, it did not meet or medically equal Listing 114.02 (SLE), (R. at 15, 19); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ further stated that Claimant's subjective complaints were considered credible only to the extent that they were supported by the evidence of record. (R. at 19)

The ALJ then proceeded to determine whether Claimant's severe impairment was functionally equal to a listed impairment by examining her performance in the six domains of functioning. (R. at 15-18)  The ALJ found that Claimant had no limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others; less than marked limitations in the domains of moving about and manipulating objects and self-care; and a marked limitation in the domain of health and physical well-being.  (R. at 16-18)  Thus, because Claimant did not have an extreme limitation of functioning in one domain or marked limitation of functioning in two domains, the ALJ concluded that Claimant's impairments, either singly or in combination, did not functionally equal a listed impairment.  (R. at 18, 19)  Accordingly, since her impairment(s) did not meet, medically equal, or functionally

equal a listed impairment, the ALJ determined that she was not disabled for purposes of eligibility for child SSI benefits.  (R. at 12, 18-19)

### Standard of Review

Pursuant to the statute governing review, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Nevertheless, the Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[3] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(citing Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(second alteration in original))).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the

---

[3] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales).

evidence is for the Commissioner, not the courts."  Id. at 31
(citing Rodriquez, 647 F.2d at 222 (citing Richardson v. Perales,
402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

## Errors Claimed

Plaintiff argues that: (1) the ALJ's findings that Claimant
did not meet or equal a listing are not supported by substantial
evidence; and (2) the Appeals Council was egregiously mistaken in
refusing to grant review despite the submission of opinion
evidence from a treating physician.

## Discussion

I.    **The ALJ's finding that Claimant did not meet or equal a
      listing is supported by substantial evidence.**

Plaintiff asserts that "[t]he ALJ's findings with regard to
the six domains and particularly with regard[] to the domain of
'health and physical well-being,' are not supported by
substantial evidence and are erroneous."  Plaintiff's Memorandum
in Support of Her Motion to Reverse the Decision of the
Commissioner ("Plaintiff's Mem.") at 8.  However, Plaintiff's
argument focuses exclusively on the domain of health and physical
well-being.  See id. at 8-12.  Accordingly, to the extent that
Plaintiff challenges the ALJ's findings with respect to the other
five domains, such argument is waived because it is neither well-
developed nor supported by specific citations to the record.[4]
See Pike v. Guarino, 492 F.3d 61, 79 n.9 (1st Cir. 2007)("It is

---

[4] The fact that Plaintiff makes no argument with respect to the
other five domains comports with the position which Claimant's counsel
took at the hearing, see (R. at 412)(agreeing with ALJ's statement
that "your basic position is that you're arguing that there's extreme
limitations as a result of the, in health and physical well being ...
[b]ased upon the number of absences from school"), and also in an
April 13, 2006, letter to the Appeals Council, see (R. at 379)(stating
that "the ALJ's finding that the claimant's impairment did not have an
extreme limitation in the domain of Health and Physical Well-Being is
unsupported by the evidence of record").

not enough merely to mention a possible argument in the most
skeletal way, leaving the court to do counsel's work, create the
ossature for the argument, and put flesh on its bones."); United
States v. Parsons, 141 F.3d 386, 390 (1st Cir. 1998)("It is
counsel's job on appeal to mine the record and prove the alleged
error, not to offer suggestive hints and leave the rest of the
work to a busy court."); see also D.R.I. LR Cv 7(d)(4) ("Any
memorandum filed in a case involving an appeal from the ruling or
determination of an administrative tribunal, including but not
limited to Social Security disability determinations, shall
include all pertinent citations to the administrative record.").

   With respect to the domain of health and physical well-
being, the Commissioner's regulations provide an explicit
procedure for evaluating whether a child suffers from a "marked"
limitation:

> (iv) For the sixth domain of functioning, "Health and
> physical well-being," we may also consider you to have a
> "marked" limitation if you are frequently ill because of
> your impairment(s) or have frequent exacerbations of your
> impairment(s) that result in significant, documented
> symptoms or signs.  For purposes of this domain,
> "frequent["] means that you have episodes of illness or
> exacerbations that occur on an average of 3 times a year,
> or once every 4 months, each lasting 2 weeks or more.  We
> may also find that you have a "marked" limitation if you
> have episodes that occur more often than 3 times in a
> year or once every 4 months but do not last for 2 weeks,
> or occur less often than an average of 3 times a year or
> once every 4 months but last longer than 2 weeks, if the
> overall effect (based on the length of the episode(s) or
> its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv).  The regulations also delineate
the procedure for assessing whether an "extreme" limitation is
present:

> (iv) For the sixth domain of functioning, "Health and
> physical well-being," we may also consider you to have an
> "extreme" limitation if you are frequently ill because of

your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation in paragraph (e)(2)(iv) of this section. However, if you have episodes of illness or exacerbations of your impairment(s) that would rate as "extreme" under this definition, your impairment(s) should meet or medically equal the requirements of a listing in most cases.

20 C.F.R. § 416.926a(e)(3)(iv).

The ALJ found that in the domain of health and physical well-being:

[T]he child has "marked" limitations. Non-examining sources assessed a marked limitation in this domain due to SLE with subcapsular cataracts treated with Prednisone. The child has SLE with mild subcapsular cataracts and episodes of oral lesions and joint aching with full range of motion. Treating sources consistently noted the claimant was doing well and examinations between the infrequent flare-ups were unremarkable. The child's mother reported the child had difficulty seeing, yet testing revealed 20/25 corrected vision and Dr. Bulan stated the subcapsular cataracts were visually insignificant. While the child alleged disability due to high blood pressure, treating sources did not report any concerns about blood pressure and her readings were normal for a child. Treating sources and the claimant reported no medication side effects. Dr. Alario observed the child was Cushingoid and hirsute, but stable. While the child testified she had seven bad days a month, school records reflect she missed 22 out of 71 days this year and 36 out of 180 last year. The child's attorney was instructed to obtain documentation from the treating physician to confirm the absences were specifically impairment related, yet Dr. Yalcindag's statement only indicated the SLE flares could cause the child to be absent more than peers. The child's steroid dependency does not reach a disabling level and she has no significant involvement of one of the thirteen areas as she has no significant documentation of severe fatigue, fever, malaise, weight/growth impairment or involvement of multiple organs or body systems. Thus, the Administrative Law Judge finds the child has a marked impairment in this domain due to SLE with cataracts but the record establishes she does well between her

9

infrequent flare-ups.

(R. at 18)

Plaintiff makes six arguments in support of her contention that the ALJ's finding of a marked impairment in the domain of health and physical well-being is not supported by substantial evidence.  First, Plaintiff argues that the ALJ's findings are not supported by substantial evidence as the ALJ did not rely on medical opinions from any source who had seen all or substantially all of the medical evidence.  Plaintiff notes that the reports of the state agency doctors, both of whom assessed claimant as having a marked impairment in the domain of health and physical well-being, (R. at 108, 292), but not meeting a listing requirement, (R. at 104, 289), were rendered in April and August of 2004, (R. at 105, 290).  Thus, because the latest of these reports was provided eighteen months before the ALJ's February 15, 2006, decision, (R. at 19), and there are no opinions from any treating source that claimant's condition met or equaled a listing, see Plaintiff's Mem. at 11, Plaintiff contends that there was no substantial evidence from any medical source on which the ALJ could base his opinion, see id.

Plaintiff's emphasis on the purported lack of affirmative evidence supporting the ALJ's decision misplaces the burden of proof.  Id.  A claimant bears the burden of proving that she meets or equals a listing.  See 20 C.F.R. § 416.912; see also Torres v. Sec'y of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989)("[I]t is the claimant's burden to show that he has an impairment or impairments which meets or equals a listed impairment in Appendix 1.").  An ALJ does not err by finding that a claimant does not meet or equal a listing where no medical opinion substantiates that the claimant's condition meets or equals a listing.  See Gonzalez-Aleman v. Sec'y of Health & Human Servs., No. 95-2168, 86 F.3d 1146, 1996 WL 267275, at *1 (1st

10

Cir. May 21, 1996)(unpublished per curium)(citing <u>Torres v. Sec'y of Health & Human Servs.</u>, 870 F.2d 742, 745 (1st Cir. 1989)) (rejecting plaintiff's claim that ALJ erred in not finding that Plaintiff met or equaled Listed impairment where plaintiff proffered no medical opinion to support his claim).  Although Plaintiff attempts to cast the lack of any opinion from a treating or examining physician that Claimant's condition met or equaled a listing as somehow being supportive of her first claim of error, the converse is actually the case.  The ALJ was entitled to draw a negative inference from Plaintiff's failure to adduce any medical opinion stating that Claimant qualified under the listing.  <u>Cf.</u> <u>Mendoza v. Sec'y of Health and Human Servs.</u>, 655 F.2d 10, 13 (1st Cir. 1981)(applying substantial evidence test to ALJ's finding that claimant did not meet her burden of proof).  "An ALJ is entitled to rely not only on what the record says but also on what it does not say." <u>Wilson v. Apfel</u>, No. 97 CV 1410(NG), 1998 WL 433809, at *7 (E.D.N.Y. July 30, 1998)(citing <u>Filicomo v. Chater</u>, 944 F.Supp. 165, 170 n.5 (E.D.N.Y. 1996) (citing <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553 (2nd Cir. 1983))).

The opinions of the two state agency physicians clearly constitute substantial evidence that Claimant's impairment did not meet or equal a listed impairment at least through the date of the second of those opinions, August 12, 2004.  (R. at 105, 290)  While the record reflects some exacerbation of symptoms in 2005 and early 2006, Plaintiff does not explain how Claimant's condition worsened to such an extent as to meet or equal a listing as of the date of the ALJ's decision.  Without such an analysis, Plaintiff fails to demonstrate that remand is warranted.  <u>See</u> <u>Torres v. Sec'y of Health & Human Servs.</u>, 870 F.2d at 745 ("[E]ven on appeal, the claimant presents no substantive argument indicating how he, allegedly, does meet [a

listing]."). In short, Plaintiff's argument that the ALJ erred in finding that Claimant had a marked rather than an extreme limitation in the domain of health and physical well-being fails because Plaintiff does not explain how the evidence in the record satisfies or supports a finding of extreme limitation.

Moreover, substantial evidence supports the ALJ's determination that Claimant's limitations were marked and not extreme. A finding of extreme limitation is required when a child claimant experiences frequent periods of illness "that result in significant, documented symptoms or signs substantially in excess of the requirements for showing of a 'marked' limitation." 20 C.F.R. § 416.962a(e)(3)(iv). Here Claimant's symptoms simply did not persist substantially in excess of the parameters prescribed for marked impairments. The evidence before the ALJ demonstrated that Claimant was severely ill for approximately one week in January 2005, (R. at 305-10), possibly a few days in June 2005, (R. at 315-16), and approximately two weeks during November and December 2005, (R. at 323-26, 367). Other than during these periods, Claimant appears to have been asymptomatic or relatively asymptomatic during the majority of the period at issue. Her medications effectively controlled her illness, (R. at 297, 299-300, 314, 317, 321), and she functioned relatively normally, (R. at 72, 94-98, 407-09, 413-14). Even if the additional evidence of Claimant's one week hospitalization February 1-8, 2006, (R. at 438), is considered, the ALJ's conclusion that Claimant's limitation did not "substantially exceed" the marked level was reasonable. The Court declines to second guess it.

Plaintiff's second argument is that the ALJ allegedly improperly interpreted raw medical data in finding that Claimant did not have an extreme impairment. See Plaintiff's Mem. at 11. The Court disagrees. An ALJ is permitted to make "common-sense"

judgments based on medical reports.  Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990)("It is true ... that we have held–and we reiterate–that since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record."); see also id. ("This principle does not mean, however, that the [Commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment.").

There is also nothing improper with an ALJ construing readily accessible medical conclusions, such as statements that an individual is stable or doing well or experiencing only mild or moderate symptoms.  Of course, an ALJ is not qualified to interpret laboratory results or medical imaging.  However, here Plaintiff makes no such contention.  The ALJ was entitled to review the medical records and rely upon the plainly worded findings expressed therein in concluding that Claimant's condition had not worsened to the extent that she satisfied the requirements for an extreme limitation in the domain of health and physical well-being.[5]  In particular, the ALJ could permissibly determine from Claimant's medical reports the number of episodes of illness or exacerbations which she experienced, when they occurred, and their duration.  The ALJ could also permissibly determine whether the episodes of illness or exacerbations which Claimant experienced were "substantially in excess of the requirements for showing a 'marked' limitation

---

[5] It bears reiterating that the regulation provides that "if you have episodes of illness or exacerbations of your impairment(s) that would rate as 'extreme' under this definition, your impairment(s) should meet or medically equal the requirements of a listing in most cases."  20 C.F.R. § 416.926a(e)(3)(iv).

...," 20 C.F.R. § 416.926(a)(e)(3)(iv), so as to constitute a severe impairment.

Plaintiff's third contention is that the ALJ allegedly misinterpreted evidence.  See Plaintiff's Mem. at 11. Specifically, Plaintiff posits that "[i]t appears that [Claimant's] flares of Lupus were not so infrequent as the ALJ believed."  Id.  Focusing on a single statement in Dr. Alario's October 17, 2005, report (i.e., "Assessment at this time is that [Claimant], hopefully, is beginning to go into remission from her serologic flare from lupus." (R. at 322)), Plaintiff appears to suggest that Claimant suffered from an exacerbation of symptoms continuously from June to October of 2005.  See id.  However, Dr. Alario's July 18, 2005, report reflects that "[s]ince going on the Orapred, [Claimant] has felt much better.  She denies oral ulcers, hair loss, abdominal pain, nausea, vomiting, diarrhea, rashes, blood in her stools or in her urine.  On physical exam, she looked well."  (R. at 317)  His August 29, 2005, report states that Claimant "continues to feel well, after the initial flare," (R. at 319), and that she "seems to be quite stable, at present," (R. at 320).

Plaintiff acknowledges this improvement, but suggests that the statement in Dr. Alario's October 17, 2005, report indicates that a layman's interpretation of a "flare" differs from a medical expert's.  See Plaintiff's Mem. at 12.  As to this point, the Court agrees.  It appears that the ALJ used the word "flare" to describe periods in which Claimant felt significantly ill, while her physicians used the term in a more technical sense in reference to blood chemistry.  (R. at 315-16)  However, the Court agrees with the Commissioner that this is a hollow distinction, given that merely having lupus is not sufficient to warrant a finding of disability.  See 20 C.F.R. 404, Subpt. P, App. 1, § 114.02; see also Tsarelka v. Sec'y of Health & Human Servs., 842

14

F.2d 529, 534 (1st Cir. 1988)(per curiam)(explaining that the
mere diagnosis of a particular ailment does not entitle a
claimant to disability benefits).   It is the effects or
manifestations of the illness which control the proper outcome of
a disability proceeding.   See 20 C.F.R. 404, Subpt. P, App. 1, §
114.02.   Here the ALJ properly focused on the symptoms
experienced by Claimant.   To the extent that Plaintiff may
contend the ALJ misinterpreted the evidence relating to the
duration of the episode of illness or exacerbation which Claimant
experienced in June of 2005, such contention is rejected as being
at odds with the record.[6]

---

[6] It bears noting that the ALJ asked Plaintiff's counsel at the
hearing about the number and duration of Claimant's episodes of
illness:

> Now, counsel, I'm looking at the records pretty closely.  I
> see where there are documentations of there was [sic] an
> exacerbation February '04, June '05, and possibly December
> '05, and there were episodes to viral episodes January '05 and
> November '05, but generally speaking the references do
> indicate that she's doing well.   So are there any other
> documented exacerbations of lupus that I should be aware of
> that, since November '03, that you found in the record?   I
> mean those are the five that I was able to find, and two of
> the five could have been from a virus ....

(R. at 410)   Counsel responded that:

> I think what the records show is that following her diagnosis
> in March of '02, she had, the beginning of the illness was a
> little bit of a rocky start, but then she did okay for a
> little while.   She's been maintained on the equivalent of
> Prednisone throughout where you can see if they tried to lower
> her Prednisone, she gets some symptom or another.   Certainly
> as time has gone on, there's been more complaints of aches and
> pains and what has been termed at times extreme fatigue,
> mostly since, I'd say early '04.   I don't think there's
> anything that we're missing that you don't have.

(R. at 410-11)   Counsel did not indicate that there were more
documented exacerbations of Plaintiff's SLE, nor did she dispute the
ALJ's listing of the documented exacerbations of Plaintiff's SLE.   If
Plaintiff disputed the ALJ's count of such exacerbations (or

Plaintiff's fourth contention is that the records pertaining to Claimant's February 2006 hospitalization "show evidence of organ involvement which is a factor in determining whether a listing is met ...." Plaintiff's Mem. at 12. However, those records were not before the ALJ. The Court of Appeals for the First Circuit has made clear that the ALJ's decision is to be reviewed based on the evidence that was before him. See Mills v. Astrue, 244 F.3d 1, 5 (1st Cir. 2001)("[W]e agree with the Commissioner's view that we may review the ALJ decision solely on the evidence presented to the ALJ."); see also id. ("The ALJ has not 'made a mistake' in ignoring new evidence that was never presented to him.").

Fifth, Plaintiff relatedly faults the ALJ for failing to request the records relating to Claimant's February 2006 hospitalization, see Plaintiff's Mem. at 12 ("[T]he ALJ was made aware after the hearing but before his decision that [Claimant] had again been admitted to [t]he hospital. Those records were later submitted to the Appeal[s] Council. Those records show evidence of organ involvement which is a factor in determining whether a listing is met.[7] As the ALJ failed to request those records, his findings cannot be said to be supported by substantial evidence.")(citations omitted); see also (R. at 397)(Letter from counsel to ALJ dated 2/9/06)(informing ALJ that Claimant had recently been hospitalized for one week due to her lupus and stating that "if you are in need of those records to

---

determination of their duration), the hearing was the time to raise the issue, not after the fact. See Pearson v. Fair, 808 F.2d 163, 166 (1st Cir. 1986)("[A] party cannot sit silently by, await the entry of judgment, and only then (having seen the result and having been disappointed thereby) bemoan the court's failure to take evidence.").

[7] Although Plaintiff states that organ involvement is a factor in meeting the requirements of Listing 114.02, the Court notes that Plaintiff does not state that the involvement is such that the requirements are met.

make your decision, kindly ask your hearing assistant to contact me and I will immediately send for those records."). Presumably, the ALJ did not feel that he was "in need of those records to make [his] decision." (R. at 397)  He was under no obligation to request them.  The ALJ developed "an adequate record from which a reasonable conclusion [could] be drawn." Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).[8] Plaintiff did not ask that the record be held open for a period of time, nor did she alert the ALJ that the reports were as significant as she now claims. "It is not enough to say that had [the ALJ] seen more information his decision would have been different." Mandziej v. Chater, 944 F.Supp. 121, 132 (alteration in original).

Plaintiff's sixth and final argument in support of this claim of error is that "although the evidence does not conclusively demonstrate that all school absences were related to [Claimant's] Lupus, the weight of the evidence does demonstrate

[8] The First Circuit has stated that:

In most instances, where appellant himself fails to establish a sufficient claim of disability, the [Commissioner] need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the [Commissioner] has recognized that []he has certain responsibilities with regard to the development of evidence and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled—as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991)(quoting Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980)); see also Currier, 612 F.2d at 598 (noting that, while in some circumstances the ALJ has a heightened duty to develop the record, "we do not see such responsibilities arising in run of the mill cases"). Here the ALJ did not have a "heightened duty."

17

that between November and December of 2005, when there were 17
absences, [Claimant] was having an exacerbation of her illness.
Accordingly, although Dr. Yalcindag did not specifically link
[Claimant's] illness to her absences as the ALJ wanted, the
evidence provided the link, which the ALJ ignored."  Plaintiff's
Mem. at 12 (citations omitted).

    At the January 9, 2006, hearing, the ALJ asked counsel three
times to provide specific documentation linking Claimant's
absences to her lupus.  (R. at 406, 411, 416-17)  After
questioning Plaintiff regarding Claimant's absences and whether
the school required a note from Claimant's doctor, the ALJ stated
that:

> ALJ: What I'm going to want, I will give you 10 days to
> get some medical substantiation of the fact that
> the doctor is aware of the absences and they're
> impairment related.
>
> ATTY: Okay.
>
> ALJ: Okay?  Because you know, there are kids, and I'm
> not saying it's this case here, some kids just
> don't, won't go to school, and the parents won't
> enforce it ....  [Y]ou can get it either from the
> school, I don't know if they keep copies of this
> stuff, or from the doctor confirming the dates
> that he's aware that she was medically unable to
> go to school.  Okay.

(R. at 406)  Subsequently, after summarizing the exacerbations of
Claimant's lupus he found in the record, the ALJ reminded counsel
of the required documentation:

> ALJ: Okay.  Are you going to get a statement from the
> doctor confirming that --
>
> ATTY: Confirming that her absences are due to her
> illness.
>
> ALJ: Okay.  And, okay.

18

> ATTY: I mean, if we look at her absences last year, 36
> in what was it nine months they're in school basically?
>
> ALJ: Okay, but that's assuming that they're all --
>
> ATTY: Assuming that they're --
>
> ALJ: Medically related --
>
> ATTY: Attributable to her disease, yes.
>
> ALJ: Right.

(R. at 411)  Finally, before closing the hearing, the ALJ
reiterated the need for documentation:

> ALJ: Okay.  All right.  So basically I understand what
>       counsel is saying, and I think if someone has to
>       be out 30 days during a year, that would probably
>       satisfy the extreme limitation --
>
> ATTY: Yes, Your Honor.
>
> ALJ: And, you know, we get the documentation, that will
>       be what I need.
>
> ATTY: Okay.

(R. at 416-17)

What the ALJ received was a letter from Dr. Yalcindag dated
January 26, 2006, addressed "To Whom It May Concern," (R. at
378), which stated in full that:

> [Claimant] is followed in our Pediatric Rheumatology
> Clinic with a diagnosis of Systemic Lupus Erythematosus.
> This is a systemic autoimmune condition characterized by
> remissions and frequent flares.  Accordingly, [Claimant]
> may have to miss school more often than her peers due to
> activation of her disease.  This letter has been provided
> upon request from [Claimant's] mother.  Please do not
> hesitate to contact us with further questions.

(Id.)  The ALJ addressed this letter in his decision:

> The  claimant's  attorney  was  requested  to  provide
> documentation  expressly  confirming  that  those  22[]

19

> absences were due to exacerbations of SLE.   On January
> 26, 2006, Dr. Yalcindag stated SLE was a systemic
> autoimmune condition characterized by remissions and
> frequent flares that **could** result in the child being
> absent more often than peers.   This statement does not
> provide the medical confirmation requested.

(R. at 15)(internal citations omitted)(bold added); <u>see also</u> (R.
at 18).   Plaintiff acknowledges that Dr. Yalcindag's statement
"did not specifically link [Claimant's] illness to her absences
as the ALJ wanted ...."   Plaintiff's Mem. at 12.   Given the
specificity of the ALJ's instructions to counsel and counsel's
agreement to provide the requested documentation,[9] which the ALJ
stated would enable him to find an extreme limitation in the
domain of health and physical well-being, (R. at 417), the Court
cannot fault the ALJ for finding a "marked," rather than
"extreme," limitation in this domain.

    In sum, the Court finds that the ALJ's conclusion that
Claimant had a "marked," rather than "extreme," limitation in the
domain of health and physical well-being is supported by
substantial evidence.   Accordingly, Plaintiff's first claim of
error should be rejected.

## II.  **The Appeals Council was not egregiously mistaken in refusing to grant review.**

    Plaintiff argues that the Appeals Council erred in failing
to remand after reviewing additional evidence, specifically
medical records from the period of February-July of 2006
(including a hospitalization in February 2006).   <u>See</u> Plaintiff's
Mem. at 12-14.   The Appeals Council stated that it "found that
this information does not provide a basis for changing the

_____

    [9] For the same reason, the Court rejects Plaintiff's contention
that "[a]t a minimum, if the ALJ was unsatisfied with the physician's
explanation of the claimant's school absences, [the ALJ] was obligated
to seek further clarification from the treating source," (R. at 379)
(Letter from counsel to Appeals Council dated 4/13/06).

Administrative Law Judge's decision."  (R. at 5)

In Mills v. Apfel, 244 F.3d 1 (1st Cir. 2001), the First Circuit held that "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action." Id. at 5.  Plaintiff cites two cases in which the district court remanded when the Appeals Council declined to review an ALJ's decision in circumstances similar to those present here, namely that the new evidence did not provide a basis for changing the ALJ's decision, albeit for different reasons.  See Ortiz Rosado v. Barnhart, 340 F.Supp.2d 63, 67 (D. Mass. 2004)(remanding where Appeals Council's language that new evidence "did not provide a basis for disturbing the ALJ's decision" was found to be so broad that egregiousness standard was impossible to apply); Orben v. Barnhart, 208 F.Supp.2d 107, 111 (D.N.H. 2002)(remanding where Appeals Council's denial of review on grounds that supplemental evidence "did not provide a basis for changing the [ALJ's] decision" was found to constitute an egregious mistake)(internal quotation marks omitted).  This Court, however, has recently addressed the same issue and reached a different decision.

In Kirby v. Astrue, No. C.A. 07-422A, 2008 WL 2787926 (D.R.I. July 17, 2008), Magistrate Judge Lincoln D. Almond concluded that the plaintiff, who argued that the Appeals Council had erred by declining to remand based on additional evidence or, at least, should have explained its reasoning, had not presented a reviewable Appeals Council decision.  Id. at *9.  Judge Almond recognized that in general, the discretionary decision of the Appeals Council to deny a request for review of an ALJ's decision is not reviewable.  Id. at *10.

> The First Circuit has, however, held that review of Appeals Council action may be appropriate in those cases "where new evidence is tendered after the ALJ decision." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).  In such

cases, "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action." Id.  This avenue of review has been described as "exceedingly narrow." Harrison v. Barnhart, C.A. No. 06-30005-KPN, 2006 WL 3898287 (D. Mass. Dec. 22, 2006).  Further, the term "egregious" has been interpreted to mean "[e]xtremely or remarkably bad; flagrant," Ortiz Rosado v. Barnhart, 340 F.Supp.2d 63, 67 (D. Mass. 2004) (quoting Black's Law Dictionary (7th ed. 1999)).

Here, the Appeals Council issued a "boiler plate" denial of Plaintiff's Request for Review. (Tr. 4-6).  It noted that the "additional evidence" submitted by Plaintiff was considered, and it  concluded that such evidence did "not provide a basis for changing the [ALJ's] decision." (Tr. 4-5).  The additional evidence is not substantively discussed by the Appeals Council. Plaintiff contends that the Appeals Council's failure to articulate its reasoning makes it impossible to apply the "egregious mistake" standard.

While Plaintiff's point has some appeal at first blush, it is exposed as flawed when you look closely at the First Circuit's reasoning in Mills.  In Mills, the First Circuit recognized that an Appeals Council denial of a request for review has all the "hallmarks" of an unreviewable, discretionary decision.  Mills, 244 F.3d at 5.  The Appeals Council is given a great deal of latitude under the regulations and "need not and often does not give reasons" for its decisions. Id.  Thus, the First Circuit "assume[d] that the Appeals Council's refusal to review would be effectively unreviewable if no reason were given for the refusal." Id. at p. 6.  It did, however, create a narrow exception for review when the Appeals Council "gives an egregiously mistaken ground for [its] action." Id. at p. 5.  The First Circuit did not find this result to be a "serious anomaly" because "there is reason enough to correct an articulated mistake even though one cannot plumb the thousands of simple 'review denied' decisions that the Appeals Council must issue every year." Id. at p. 6.  Plaintiff's argument is basically an attempt to turn the narrow Mills rule inside/out.

Kirby, 2008 WL 2787926, at *10 (alterations in original); see also Mills, 244 F.3d at 6; Jette v. Astrue, C.A. No. 07-437A,

2008 WL 4568100, at *18 (D.R.I. Oct. 14, 2008).

Here, the Appeals Council denied review using the same "boiler plate" language cited above, namely that the new information did "not provide a basis for changing the [ALJ's] decision." (R. at 5)  The Court cannot say that this is an "egregiously mistaken ground," Mills, 244 F.3d at 5, for declining to review the ALJ's decision, see Kirby, 2008 WL 2787926, at *10.

While Plaintiff states that "[h]ad the ALJ had such evidence, his analysis of whether [Claimant] met or equaled a listing may well have changed," Plaintiff's Mem. at 14, the Court declines to so speculate.  See Orben, 208 F.Supp.2d at 110 n.2 ("Although raised as a potential concern in Mills, the court need not ask 'how likely is it that this [supplemental] evidence would [have] alter[ed] the result if it had been before the ALJ.' Mills, 244 F.3d at 4.  That is never a question asked by the district court ....")(first, second, and third alterations in original).[10]  The Appeals Council determined that the evidence submitted by Plaintiff after the ALJ's decision did not provide a basis for altering the decision.  This Court should not disturb that determination.

The Court finds that the Appeals Council did not give an "egregiously mistaken ground" for its refusal to review the ALJ's decision.  Mills, 244 F.3d at 5.  Accordingly, Plaintiff's second claim of error should be rejected as well.

---

[10] The First Circuit in Mills noted that "there is nothing that prevents a new application directed to the future, assuming [the plaintiff] can muster the medical support to show the severity of her conditions."  244 F.3d at 9; see also Ortiz Rosado, 340 F.Supp.2d at 65 (noting that after the Appeals Council decided that new evidence did not provide a basis for changing the ALJ's decision, the plaintiff filed a subsequent application for SSI, which was approved).  That is precisely what happened in the instant matter.  See Plaintiff's Mem. at 4; Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner at 2.

**Conclusion**

The Court finds that the ALJ's determination that Claimant was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is legally correct. Accordingly, I recommend that Plaintiff's Motion to Reverse be denied and that Defendant's Motion to Affirm be granted.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 24, 2009